# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA TREVINO, | ) |
| Plaintiff, | ) |
| | ) Case No. 3:11-cv-01139 |
| v. | ) |
| | ) Judge Aleta A. Trauger |
| AUSTIN PEAY STATE UNIVERSITY, | ) |
| Defendant. | ) |

## MEMORANDUM

The defendant has filed a Motion to Dismiss (Docket No. 6), which the plaintiff has opposed in part (Docket No. 10). For the reasons stated herein, the motion will be granted.

## BACKGROUND

### I. Factual Background

On December 1, 2011, the plaintiff, Patricia Trevino, filed this lawsuit against defendant Austin Peay State University ("Austin Peay"). Trevino, a Mexican-American, was hired by Austin Peay as an accounting clerk within its Business Department. One of Trevino's duties was to monitor student financial accounts for students receiving financial aid benefits. Over time, Trevino identified what she believed to be a pattern of discrimination by Austin Peay against African-American students "in their qualifications for and transfer of monies into students' accounts." (Compl. ¶ 13.) Trevino reported this practice to the Director of Accounting, after which she suffered unspecified forms of "harassment, hostility and discrimination." (*Id*. ¶ 14.)

Trevino complained to Austin Peay's Human Resources Department, which "attempted to dissuade [her] from filing a complaint of retaliation and discrimination," (*id*. ¶ 15), apparently

1

by informing her that she would not be permitted to make discrimination complaints on behalf of students (*id.* ¶ 16). The Human Resources Department informed Trevino that it intended to issue a "no cause" finding concerning her complaints. Trevino reported concerns about the Human Resources investigation and its findings to Austin Peay's Assistant Finance Director.

Shortly thereafter, the Assistant Finance Director circulated an email to administration employees and unspecified other employees, stating that Trevino "was complaining of discrimination." (*Id.* ¶ 18.) The email also stated that Austin Peay expected Trevino to hire an attorney and to file a formal Equal Employment Opportunity Commission ("EEOC") charge. According to the Complaint, "[t]his email described the basis and issues that Plaintiff might file under, thereby creating a chilling effect on Plaintiff." (*Id.* ¶ 19.)

Following her complaints to administration officials, Trevino allegedly was subjected to harassing and retaliatory conduct, including "disparate work load assignments, disciplinary investigations, changing of her work hours, and denial of breaks." (*Id.* ¶ 20.) Trevino was the only Hispanic/Latino employee in her office, and the Caucasian employees in her office were not treated in a similar manner. Trevino also "was subjected to micromanagement to the point that she was not even allowed to close the blinds in her office." (*Id*. ¶ 22.)

Trevino was placed on an "Employee Performance Plan" and was told to apply for another job outside of the Business Office.[1] She applied for a research technician position but did not receive that position. She also applied for a telephone operator's position but did not receive an interview. On February 28, 2010, Austin Peay terminated Trevino. Trevino then

---

[1]Many of Trevino's allegations are framed in the passive voice. Thus, with respect to certain allegations, it is unclear which official(s) allegedly engaged in the referenced conduct.

obtained a right to sue letter and determination from the EEOC, which found that she had been subjected to discrimination and retaliation.[2]

## II. Procedural History

Trevino filed suit against Austin Peay on December 1, 2011, approximately 21 months after her termination. Trevino asserts the following causes of action against Austin Peay: (1) race discrimination and retaliation in violation of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981 and 1983; (2) race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e; (3) race discrimination in violation of the Tennessee Human Rights Act ("THRA"); (4) retaliation against Trevino for engaging in protected speech on a matter of public concern, in violation of her First and Fourteenth Amendment rights;[3] and (5) wrongful discharge under Tennessee statutory and common law.[4] Austin Peay filed the instant Motion to Dismiss, which moves for dismissal of all claims.

In its motion, Austin Peay argues that Trevino does not have independently cognizable claims under §§ 1981 and 1983, because Trevino's allegations do not concern the making or enforcement of a contract, and because § 1983 does not afford an independent basis to file a claim. As to the claims under the First and Fourteenth Amendments (presumably brought

---

[2]Although referenced in the Complaint, the EEOC determination is not in the record.

[3]Although not stated in the Complaint, the court presumes that Trevino brought this cause of action pursuant to 42 U.S.C § 1983.

[4]Although not stated in the Complaint, the court presumes that the statutory retaliatory discharge claim arises under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 (2012), which makes it unlawful to discharge or terminate an employee "solely for refusing to participate in, or for refusing to remain silent about, illegal activities," which are broadly defined to include "activities that are in violation of the criminal or civil code of this state [Tennessee] or the United States or any regulation intended to protect the public, safety, or welfare."

pursuant to § 1983), Austin Peay argues that the claims fail because Austin Peay is not a "person" subject to suit under § 1983, the claims are untimely because they were not filed within one year of Trevino's termination, and Trevino has failed to allege actions constituting a constitutional violation. With respect to the THRA claim and the wrongful termination claims, which arise under Tennessee law, Austin Peay argues that it is entitled to sovereign immunity as to these claims in federal court and that, regardless, the state law claims are untimely. Finally, with respect to the timely Title VII claims, Austin Peay contends that Trevino has not pleaded allegations establishing that Austin Peay discriminated against her based on race or retaliated against her for complaining about an unlawful employment practice.

Trevino concedes that dismissal of her claims under §§ 1981 and 1983, the United States Constitution, and the THRA is appropriate. (Docket No. 10 at p. 1.) However, Trevino opposes dismissal of her Title VII race discrimination and retaliation claims.

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove

4

the facts alleged.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

At the motion to dismiss stage, a plaintiff seeking relief under Title VII must provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests," consistent with Fed. R. Civ. P. 8(a)(2).  *Swierkiewicz*, 534 U.S. at 512.  At this stage, the plaintiff is not required to plead the elements of a *prima facie* case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), which "is an evidentiary standard, not a pleading requirement."  *Swierkiewicz*, 534 U.S. at 510 ("This court has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009).  Accordingly, with respect to discrimination claims otherwise subject to the *McDonnell Douglas* burden-shifting framework, at the motion to dismiss stage, "the ordinary rules for assessing the sufficiency of a complaint apply."  *Pedreira*, 579 F.3d at 728 (quoting *Swierkiewicz*, 534 U.S. at 511); *see also Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007)

(restating holding in *Swierkiewicz* that "an employment-discrimination plaintiff satisfies her pleading burden by drafting a short and plain statement of the claim consistent with Federal Rule of Civil Procedure 8(a).") The court, therefore, must look to whether the plaintiff has "sufficiently pled 'a claim to relief that is plausible on its face.'" *Pedreira*, 579 F.3d at 728 (citing *Twombly*, 550 U.S. at 570).[5]

## ANALYSIS

---

[5]The United States Supreme Court decided *Swierkiewicz* before issuing its decisions in *Twombly* and *Iqbal*, in which it redefined the pleading standards applicable at the motion to dismiss stage. Some district courts within the Sixth Circuit and some courts outside of this circuit have questioned whether *Swierkiewicz* remains good law following *Twombly* and *Iqbal*. *See Davis v. Kroger Co.*, No. 1:09-cv-789, 2010 WL 5882114, at *2 (S.D. Ohio Sept. 15, 2010) (stating that "[i]t remains an open question in the Sixth Circuit whether *Twombly* and *Iqbal* have effectively abrogated that portion of *Swierkiewicz*" holding that a plaintiff need not allege facts as to each element of a *prima facie* case); *Kohus v. Ohio State Highway Patrol*, No. 1:09-cv-658, 2011 WL 1234021, at *6 (S.D. Ohio Feb. 15, 2011) (same); *Davis v. Metro. Gov't of Nashville*, No. 3:10-cv-0721, 2011 WL 902138, at *1 (M.D. Tenn. Mar. 15, 2011) (acknowledging this issue but stating that, "[e]ven though it may not be necessary that [the complaint] include facts constituting all the elements of a *prima facie* case in order to survive [a motion to dismiss] . . . , those elements are nonetheless relevant to the Court's analysis of the sufficiency of [the complaint]."); *Anoai v. Mildford Exempted Sch. Dist.*, No. 1:10-cv-00044, 2011 WL 53164, at *5, n.1 (S.D. Ohio Jan. 6, 2011) (stating, in *dicta*, that *Iqbal* and *Twombly* "abrogated" *Swierkiewicz*); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (finding that *Twombly* and *Iqbal* "repudiated" *Swierkiewicz*). However, many district courts within this circuit have reached the opposite conclusion, finding that *Swierkiewicz* remains good law and that *Pedreira* settled this question within the Sixth Circuit. *See Brown v. Potter*, No. 10-12374, 2011 WL 2682644, at *3-*4 (E.D. Mich. July 11, 2011); *Franks v. Village of Bolivar*, 5:11-cv-701, 2011 WL 5838209, at *3 (N.D. Ohio Nov. 18, 2011); *Shaw v. City of Cincinnati*, No. 1:10-cv-462, 2011 WL 1337157, at *3 (S.D. Ohio Apr. 7, 2011); *Schrack v. R+L Carriers, Inc.*, No. 1:10-cv-603, 2011 WL 1758430, at *6 (S.D. Ohio Apr. 20, 2011). Consistent with those decisions, this court interprets *Swierkiewicz*'s holding concerning the inapplicability of *McDonnell Douglas* at the pleading stage as good law. First, in *Twombly*, the Court itself acknowledged that its holding did not conflict with *Swierkiewicz*. *See Twombly*, 550 U.S. at 569-70. Second, *Pedreira* was issued after both *Twombly* and *Iqbal*, so there is no reason to doubt that *Pedreira* is not controlling law on this point within the Sixth Circuit. Finally, it is worth noting that the district court decisions in *Kroger*, *Metro Gov't of Nashville*, *Kohus*, and *Anoai* – in which those courts, largely in *dicta*, called *Swierkiewicz*'s continuing validity into question – do not reference *Pedreira*.

I.   **Claims Under § 1981, § 1983, the First and Fourteenth Amendments, and the THRA.**

Trevino concedes that dismissal of her claims asserted in Counts I (§§ 1981 and 1983), III (THRA), IV (First and Fourteenth Amendments), and V (Wrongful Discharge) is appropriate. Therefore, without further analysis, the court will dismiss all of those claims with prejudice.

II.   **Claims Under Title VII**

   A.   **Title VII Race Discrimination and Retaliation Provisions**

Under Title VII, a plaintiff may recover for employment-related discrimination and/or for retaliation under appropriate circumstances. With respect to discrimination, it is unlawful for an employer:

> (1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (2012). With respect to retaliation, Title VII makes it unlawful for an employer "to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* § 2000e-3(a).

   B.   **Application**

With respect to the race discrimination claim, Austin Peay argues that, although Trevino alleges that she is of Mexican descent (*i.e.*, a protected class), she does not allege that she was

7

discriminated against because of her race.[6] According to Austin Peay, all of Trevino's allegations of discrimination stem from her reporting what she believed to be discrimination against African-American students with respect to their financial aid. That is, they argue that, even accepting as true that Trevino believed that Austin Peay was engaging in discriminatory behavior with respect to its African-American students, Trevino has not alleged that she personally was discriminated against because of *her* race. With respect to the retaliation claim, Austin Peay argues that Trevino has not alleged that she was retaliated against for opposing or complaining of an "unlawful employment practice," as required by § 2000e-3. Instead, Trevino merely alleges that she complained about discriminatory practices against students receiving financial aid, which, even if true, do not constitute an "employment practice" with respect to Trevino because those practices do not involve the "limiting, segregating, or classifying of employees or applicants for employment," as stated in § 2000e-2. That is, Austin Peay argues that, even if Trevino were correct that Austin Peay had discriminated against its African-American students with respect to financial aid, that practice did not constitute an "employment practice" and, therefore, complaints about that practice are not protected by Title VII. Austin Peay does not cite to any case law in support of its positions.

In response, Trevino does not address Austin Peay's argument that her race discrimination and retaliation claims should be dismissed insofar as they relate to her complaints about Austin Peay's financial aid practices. Instead, Trevino contends that she has pleaded "alternative theories" of liability in the Complaint. She argues that, in addition to pleading that

---

[6]Although Trevino is female, the complaint asserts a Title VII claim for race discrimination only, not gender discrimination.

she was subjected to harassment and retaliation for reporting the administration's alleged discrimination against African-American students, she has also alleged that, in comparison to Caucasian and/or non-Hispanic employees in her office, she was discriminated against with respect to the terms and conditions of her employment. Aside from boilerplate case law concerning the Rule 12(b)(6) standard, Trevino does not cite to any case law in support of her position.

The court finds that Trevino has not articulated a plausible entitlement to relief under Title VII. The clear gravamen of Trevino's claims, as Austin Peay correctly points out, is that she was discriminated against and retaliated against for complaining about perceived discrimination in Austin Peay's financial aid practices. Those practices relate to Austin Peay's students, not to the terms or conditions of employment of Trevino or any other employees of Austin Peay. Therefore, those underlying alleged practices, even if proven to be true, do not violate *Title VII*. Accordingly, Trevino's complaints about those practices do not relate to any practice made unlawful by Title VII and, therefore, do not support a retaliation claim.

Furthermore, although Trevino is of Mexican descent, she does not allege any facts demonstrating that *she* was subjected to discrimination or harassment because she belongs in a protected class. Instead, the Complaint merely establishes that she was subjected to unfair treatment because she complained about Austin Peay's financial aid practices with respect to minority students, not because she personally is a member of an ethnic or racial minority. In other words, the Complaint does not even suggest that, after she had complained about Austin Peay's financial aid practices, Trevino would have been treated any differently if she were Caucasian. Accordingly, even taking the allegations of "harassing" or "retaliatory" conduct by

9

Austin Peay as true, the fact that Trevino was treated differently than Caucasian colleagues who had not complained about the university's financial aid practices does not make out a plausible claim for race discrimination.

Because Trevino has failed to state a claim under Title VII and has conceded that her remaining claims are subject to dismissal, the Motion to Dismiss will be granted and Trevino's Complaint will be dismissed.

## **CONCLUSION**

For the reasons stated herein, the Motion to Dismiss will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge